55 CCPA

**Application of Ellis H. BRYANT, Jr.**

**Patent Appeal No. 7892.**

United States Court of Customs and Patent Appeals.

March 7, 1968.

---

Watson, Cole, Grindle & Watson, Laurence R. Brown, Washington, D. C., for appellant.

Joseph Schimmel, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK,* Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of the single claim in appellant's application [1] for "High Speed Counters" as "unpatentable over Wollar [2] in view of Paschen et al.[3] under 35 U.S.C. 103."

The invention relates to an electromagnetically operated mechanical counter which operates at relatively high speeds, e. g. 200 counts per second. The counter mechanism includes a series of co-axial, digit-bearing wheels and an electromagnetically-operated advancing mechanism for rotating the first digit wheel in one direction in a step-wise fashion. The advancing mechanism comprises a rachet gear or star wheel, and a pawl which is reciprocated by a solenoid responsive to electrical impulses and by a return spring and which effects step-wise rotation of the star wheel. According to the specification, the *attainable reliable* counting speeds in such a system are substantially less than those theoretically obtainable from optimization of part and electromagnetic circuit design "because of the bounce or chatter

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 312,966, filed October 1, 1963.

2. U.S. Patent 2,998,187, issued August 29, 1961.

3. U.S. Patent 2,071,654, issued February 23, 1937.

encountered in the drive mechanism which can cause either extra counts or skipping of counts in an erratic fashion at the upper limit of attainable counting speed." The specification states:

> * * * the design speeds of the preferred rugged mechanical counters operated electromagnetically are limited and reliable operation is attainable only at about half the required speeds when electromagnetic drives and mechanisms are optimized.
>
> *   *   *   *   *   *

In accordance with the invention it has been found that as mechanical counters reach their limiting speeds, considerable chatter and bounce is encountered in ratcheting or advancing mechanisms causing erratic operation from time to time. Yet it is not readily feasible to mechanically design the mechanisms to overcome this limiting factor. According to the present invention it was discovered that by immersing the mechanical counter mechanism in a viscous liquid such as oil, which is also preferred for its lubricating qualities, the bounce and chatter was damped to such an extent that the *reliable* counter speed could be almost doubled. [Emphasis supplied]

*   *   *   *   *   *

The viscosity of the oil is chosen to provide proper damping action dependent upon the masses and speeds of the respective parts of the counter mechanism. * * *

Claim 1 reads:

1. A high speed counter having a mechanism operable at a limited top counting speed comprising a series of interconnected digit wheels with visibly readable idicia thereon, each actuated cyclically by a preceding wheel except for the initial digit wheel, means actuating the initial wheel comprising a reciprocally movable pawl mechanism and a star wheel movable in a single direction of rotation bit by bit as the pawl mechanism reciprocates, a hermetically sealed compartment surrounding said counter mechanism with a window displaying said visible indicia externally of the compartment, a liquid in the compartment enveloping the pawl mechanism having a selected viscosity to damp out chatter and bounce of the pawl mechanism when operated at counting speeds outside said top counting speed, whereby higher counting speeds are attained and an electromagnetic circuit for reciprocating the pawl at a speed greater than said limiting top counting speed.

Recognizing that Wollar shows an electromagnetic counter mechanism concededly similar to appellant's but for the concept of sealing that mechanism in a compartment containing a liquid which damps out chatter and bounce, the examiner turned to Paschen who discloses an odometer mounted in an axle box of a railway car. Paschen's object is to provide an odometer which "accurately registers" and "is protected to a great extent against shocks when in operation." To that end, the operating elements of the odometer—a rachet wheel and a pawl-carrying frame, the latter reciprocated by an eccentric disk on the end of the axle and a return spring—are immersed in a lubricating oil reservoir of the axle box. The patent states:

> * * * [an] advantage of this construction is that the oil acts as a shock-absorbing and damping means for the individual elements of the register. This is as tests have shown highly important for the operation of odometers. * * *

In the examiner's view it would be obvious to operate the Wollar counter in a pool of oil in view of Paschen. He thought it apparent that Paschen's counter is capable of higher reliable counting speeds in the oil than in air "because the oil damping process prevents erroneous bounces" of the odometer mechanism. "Certainly," said the examiner, "the very reason for placing the Paschen et al. odometer in oil was to improve its performance." The board agreed, and so do we.

Appellant contends that his "simple expedient" of immersing his counter mechanism in oil is unobvious and has attained "an unexpected result," since

> * * * it would normally be reasoned that the immersing of a counter into a higher viscosity liquid than air would tend to damp and slow down its counting operation over that attained in the lower viscosity of air rather than to result in this entirely unexpected higher counting speed.

Although perhaps consistent with the terminology employed in his claim,[4] the import of appellant's argument as phrased is, we think, contradicted by his specification. We do not understand appellant's specification to teach that placing the counter mechanism in oil results in higher counting speed *per se*. Rather, the specification teaches that *reliable* counting speeds are increased when the mechanism is immersed in oil—counting speeds more closely approximating the limiting or top counting speed at which it potentially could be driven. The Patent Office did not find that to be unexpected, nor do we.

We do not think one of ordinary skill in this art would be unaware of the fact that as the device of Wollar is operated at higher speeds more error-causing "chatter and bounce" would ensue and that that phenomenon could be damped by placing the mechanism in a damping fluid as suggested by Paschen. Just as Paschen's odometer more "accurately registers" over the range of speeds at which the railway car operates because the oil damps out shocks to the operating mechanism, so appellant's device counts more reliably or accurately at speeds near the upper limit of its possible operating range of speeds—increases the reliable counting speed as it were.

With due regard for appellant's arguments, we are satisfied the board committed no reversible error in sustaining the rejection. The decision is affirmed.

*Affirmed.*

RICH, Judge (dissenting), with whom KIRKPATRICK, J., joins.

I find no suggestion whatever in the prior art of record that immersing the admittedly old electromagnetic counter of Wollar in oil, as claimed, would enable it to operate accurately at a higher, even double, speed. I therefore find no reason to hold the claimed invention obvious.

The sole basis of the rejection is the Paschen et al. patent (Paschen) which discloses an odometer (distance meter) for railway car axles arranged to run in the axle grease or oil. The patent says the grease or oil acts as a shock-absorbing and damping means and that this has been found to be important in such railway odometers. Presumably this is because the odometer is thus protected from road shocks, not the internal chattering of its own mechanism due to operating speed. I presume this because, as I will show, Paschen did not have a mechanism that would operate at high speed and must have been talking about something else.

The examiner in his Answer practically admitted appellant was right in pointing out that if Wollar's counter, which is like appellant's, were inserted in railroad axle lubricating oil, the high speed operation defined by appellant would *not* be obtained. "This statement may perhaps be true," said the examiner. He then made the cautious, hedging state-

4. The examiner observed that appellant has employed the phrase "limited top counting speed" rather loosely, stating * * * the final clause of the claim, "at a speed greater than said limiting top speed" is obviously vague and misleading. Moreover there is no basis for this phrase in the specification. Reading the phrase literally, it means that the electromagnetic circuit is capable of reciprocating the pawl at a speed greater than the top counting speed. * * * Assuming appellant does mean that he increases *reliable* counting speeds, it is not intuitively obvious that one would expect those speeds to be reduced by placing the mechanism in a liquid having a higher viscosity than air. Certainly there is no evidence of record to support such an assertion.

ment that Paschen nevertheless teaches that "operating performance" is improved by placing the odometer in axle oil or grease. So what? This is a far cry from disclosing or suggesting appellant's invention or discovery or solving his problem.

Appellant's counter is different in kind from Paschen's odometer. The starting point is the Wollar counter which has already been engineered mechanically to operate accurately as a counter at 100 counts per second. The invention, it is asserted without contradiction, doubled its speed to 200 per second.

What does Paschen's odometer do by way of speed? He does not say but a little arithmetic[1] will show. Assume a car wheel diameter of 2 feet and a train speed of 60 miles per hour—a mile a minute. The fastest moving part of his odometer is a pawl which makes one short stroke per revolution of the axle, turning a ratchet wheel which has about 20 teeth. At a mile a minute, the pawl would move only 14 times per second and the ratchet wheel would make about 3/4 of a revolution per second. From there on, in the Paschen mechanism, everything is geared down, beginning with a worm gear, and nothing moves with any appreciable speed. It resembles the odometer part of an automobile speedometer. In the roller bearing modification of Paschen wherein a drum counter of the general type of Wollar is present, things move even more slowly, the *first* moving element in the train being a worm gear, driven at the wheel speed and rotating an eccentric at a much lower speed to actuate the pawl. It could perfectly well operate in "grease," as Paschen expressly says it does. Appellant's counter obviously could not, at any rate, not at the speeds contemplated by the claim.

I agree with appellant's counsel that the rejection is predicated on the "clair-

voyance of hindsight," not on 35 U.S.C. § 103. The references wholly fail to show obviousness. Paschen teaches nothing at all about increasing possible speed. I would reverse.

55 CCPA

---

1. A 2′ wheel has a circumference of about 6.3′ and will make about 840 revolutions per mile. At 60 miles an hour—a mile a minute—it will revolve 840 times per minute, or *14 times a second*. Since railroad car wheels are likely of greater diameter than 2′, the estimate may be on the high side. A speed of 14 times a second is less than 1/7 the *slow* speed of 100 per second which appellant has increased by his invention. Paschen was not dealing with a comparable situation.